**Gary Dean ROBINSON, Petitioner and Appellant,**

v.

**Walter LEAPLEY, Warden of the South Dakota State Penitentiary, Respondent and Appellee.**

No. 18185.

Supreme Court of South Dakota.

Considered on Briefs Oct. 7, 1993.

Decided April 20, 1994.

Steven K. Rabuck of Craig, Nichols and Rabuck, Sioux Falls, for petitioner and appellant.

Mark Barnett, Atty. Gen., Frank Geaghan, Asst. Atty. Gen., Pierre, for respondent and appellee.

PER CURIAM.

Gary Dean Robinson (Robinson) appeals the denial of his application for a writ of habeas corpus. We reverse and remand.[*]

FACTS

Robinson was convicted for attempted escape on September 17, 1990 and was sentenced to serve five years in the South Dakota State Penitentiary. The sentencing court suspended the execution of two years of the sentence on the following terms and conditions:

1. That the Defendant Gary Dean Robinson remain a law abiding citizen for a period of two (2) years following his release from the South Dakota State Penitentiary.

_____

[*] This case contains issues substantially similar to those considered in *Smith v. Board of Pardons*

*and Paroles*, 515 N.W.2d 219 (S.D.1994).

2. That the Defendant Gary Dean Robinson reimburse Beadle County for his Court appointed attorney fees within two (2) years following his release from the South Dakota State Penitentiary.

Robinson served in the penitentiary for a time and on January 27, 1992, he met with a parole agent preparatory to his parole from the penitentiary. The parole agent read each and every line of the standard parole agreement to Robinson, discussed the requirements and allowed Robinson the opportunity for any questions. The parole agreement included the following pertinent conditions:

6. *ADVANCE APPROVAL:* I will secure advance approval from my supervising agent if at any time I wish to:

\* \* \* \* \* \*

c. Change employment or place of residence;

d. Leave the assigned Agent's area or the state[.]

\* \* \* \* \* \*

8. I will keep my Parole Agent informed of my whereabouts and of all activities participated in and submit such reports as required.

At the conclusion of the session with the parole agent, Robinson signed and dated the parole agreement. Robinson actually departed the penitentiary on parole status on January 31, 1992.

On March 2, 1992, Robinson's parole status expired and he commenced service of the suspended portion of his five year sentence. However, Robinson had been arrested on February 29, 1992 for allegedly violating the above provisions of his parole agreement. On or about March 3, 1992, Robinson's parole agent submitted a violation report to the Board of Pardons and Paroles formally alleging that Robinson had violated the above provisions of his parole agreement. The violation report recommended that, "Robinson's Suspended Sentence status be revoked and that the sentence be imposed to the fullest."

On March 11, 1992, a probable cause hearing was held concerning the alleged violations of Robinson's parole agreement. Robinson admitted the violations. On March 20, 1992, Robinson was personally served with a notice of hearing before the Board of Pardons and Paroles. The notice advised Robinson that the purpose of the hearing was to determine whether cause existed to believe that the conditions of his "SUSPENDED SENTENCE" had been violated and that the claimed violations of his "SUSPENDED SENTENCE" were the above provisions of his parole agreement. On March 25, 1992, the Board held its hearing, found Robinson in violation of his parole agreement and revoked his suspended sentence.

Robinson filed his application for a writ of habeas corpus on April 7, 1992. He contended that the Board of Pardons and Paroles wrongfully revoked his suspended sentence because he had violated none of the explicit conditions of the suspended sentence. A hearing on the matter was ultimately conducted before the habeas court on August 5, 1992. The habeas court entered its memorandum opinion, later incorporated by reference in its findings of fact and conclusions of law, on October 28, 1992. Noting that the Board of Pardons and Paroles had sole jurisdiction to supervise and revoke Robinson's parole and/or suspended sentence; that Robinson was on parole and violated the terms of his parole during that time; that the paperwork necessary to revoke parole could not be completed until after Robinson's parole status had expired; and, that the Board still had jurisdiction over Robinson due to his suspended sentence; the circuit court determined that the Board acted well within its authority in revoking Robinson's suspended sentence and denied habeas corpus relief. Robinson appeals.

## ISSUE

DID THE BOARD OF PARDONS AND PAROLES HAVE AUTHORITY TO REVOKE ROBINSON'S SUSPENDED SENTENCE?

█ Robinson asserts that his probation violations involving his failure to keep his parole agent advised of his whereabouts only violated the conditions of his parole and not those of his suspended sentence. According-

ly, Robinson argues that when the Board of Pardons and Paroles revoked his suspended sentence for violation of the parole conditions, it exceeded its revocation authority under SDCL 23A–27–19, which provides in pertinent part:

> The board [of pardons and paroles] is charged with the responsibility for enforcing the conditions imposed by the sentencing judge and the board retains jurisdiction to revoke the suspended portion of the sentence *for violation of the terms of the suspension.* (emphasis added).

State responds with the contention that the conditions of Robinson's parole were subsumed in the conditions of his suspended sentence. Accordingly, State asserts that the Board acted well within its authority when it revoked Robinson's suspended sentence for violation of those conditions.

As support for its contentions, State relies primarily on *Turo v. Solem,* 427 N.W.2d 843 (S.D.1988). In *Turo,* this Court held that the Board of Pardons and Paroles may impose conditions on a suspended sentence in addition to those imposed by the sentencing court if the additional conditions are reasonable and not inconsistent with those imposed by the sentencing court. State's reliance on *Turo,* however, is misplaced. Turo was sentenced to serve 18 months in the penitentiary with the latter 12 months suspended. After serving about a month and a half in the penitentiary, Turo was released on parole. Various conditions were imposed on her parole by the Board of Pardons and Paroles including conditions not imposed by the sentencing court in suspending Turo's sentence. One week before Turo's parole period ended and her suspended sentence commenced, Turo's parole agent met with her. The agent explained to Turo that the conditions of her suspended sentence would be the same as they had been for her parole. He had Turo execute a contract agreeing to abide by the conditions of her parole *and* her suspended sentence and the conditions of both the parole and suspended sentence were enumerated in the contract. While serving the suspended portion of her sentence, Turo violated one of the conditions added by the Board of Pardons and Paroles and her suspended sentence was revoked. On these facts, this Court held that the revocation was appropriate because the Board of Pardons and Paroles had the authority to add conditions to the suspended sentence and Turo had violated one of the additional conditions.

The instant case is distinguishable. Robinson executed only a parole agreement. Nothing in the agreement indicated that the conditions of his parole would also apply to his suspended sentence nor was Robinson ever so advised. Robinson was only informed that he would be under "supervision" during his suspended sentence period but nothing in the record indicates what "supervision" meant. Thus, unlike the situation in *Turo,* the Board of Pardons and Paroles in the instant case never effectively added conditions to Robinson's suspended sentence. It follows that the only conditions of the suspended sentence were those imposed by the sentencing court at the time of sentencing. It was never shown that Robinson violated either of those conditions and, therefore, as he argues, the Board of Pardons and Paroles exceeded its authority under SDCL 23A–27–19 in revoking his suspended sentence.

Recognition of state's argument under *Turo* would run afoul of the very due process requirements it acknowledges with its citation of *United States v. Dane,* 570 F.2d 840, 843–44 (9th Cir.1977):

> It is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty. This is no less true whether the loss of liberty arises from a criminal conviction or the revocation of probation.
>
> As a general matter, formal conditions of probation serve the purpose of giving notice of proscribed activities. But a formal condition is not essential for purposes of notice. Courts have sustained the revocation of probation for criminal activity committed prior to the effective date of the conditions, or where the defendant was not aware of the conditions. In such a case, knowledge of the criminal law is imputed to the probationer, as is an understanding that violation of the law will lead to the revocation of probation. On the other hand, where the proscribed acts are not

criminal, due process mandates that the petitioner cannot be subjected to a forfeiture of his liberty for those acts unless he is given prior fair warning. Of course, where the warning is not contained in a formal condition, the record must be closely scrutinized to determine whether the defendant did, in fact, receive the requisite warning. (citations and footnote omitted).

█ While a probationer's failure to keep his parole agent advised of his whereabouts might well be a necessary and fundamental condition of any suspended sentence, State cites no authority that such a failure constitutes criminal activity. Thus, unless the probationer receives prior fair warning that failure to keep his parole agent advised of his whereabouts can lead to revocation of his suspended sentence, the Board of Pardons and Paroles' decision to revoke violates the requirements of due process. *See, Dane, supra. See also, United States v. Foster,* 500 F.2d 1241 (9th Cir.1974) (probationer's failure to maintain contact with probation department could not be predicate for revoking probation because probationer had not been informed that he was obliged either to report to probation department or to advise them of change of address).

In *Turo, supra,* the "prior fair warning" requirement was clearly met by the discussion between the parole agent and Turo concerning the continuation of the conditions of her parole during her suspended sentence and by Turo's execution of the written contract enumerating the conditions of both her parole *and* suspended sentence. There is no similar written contract in the instant case. In fact, when Robinson's parole agent was asked during the habeas hearing if he had explained to Robinson that he would be under the same requirements of supervision during his suspended sentence as for parole, the agent specifically answered, "No, I didn't."

State submits it was impossible to advise Robinson of the additional conditions placed on his suspended sentence because the very act that led to revocation of the suspension, i.e., failure to meet with and keep his parole agent advised of his whereabouts, made it impossible to give fair warning of the conditions. However, State fails to explain why the pertinent conditions of Robinson's suspended sentence could not have been set forth in Robinson's parole agreement.

State's brief acknowledges that due process of law requires that prior fair warning be given to a probationer of those noncriminal acts that can lead to a loss of probation. *See, Dane, supra.* Simply stated, the authority of *Turo, supra,* is inapplicable here because that prior fair warning was not given. There is nothing in the record whatsoever to establish that Robinson was ever informed that failure to maintain contact with his parole agent could lead to a revocation of his suspended sentence. While such a requirement might be so obvious and fundamental as to render the advisement unnecessary, breach of the requirement is not a criminal act. Moreover, since it is so obvious and fundamental, it should not be beyond the means of the Board of Pardons and Paroles to find a way to give a sufficient warning of the requirement prior to releasing an offender from the penitentiary under a split parole/suspended sentence.

Based upon the foregoing analysis, the habeas court's decision is reversed and this matter remanded with instructions to grant Robinson's application for habeas corpus relief by reinstating his suspended sentence. Having reached this decision we deem it unnecessary to address the balance of the arguments raised in Robinson's brief.

Reversed and remanded.